UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICIAH MASSEY and TASHAWNTAY WADE,

Plaintiffs,

v.

ROBERT GROSS, MICHAEL HARDEN, DAVID CLAEYS, GREG WARD, and JOHN DOES 1-10; and the CITY OF LAKE FOREST PARK, WASHINGTON,

Defendants.

CASE NO. C06-823RSM

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is now before the Court for consideration of the parties' cross-motions for partial summary judgment. Dkt. ## 9, 19. After consideration of the motions, responses, replies, and attached declarations, the Court finds that material facts are in dispute, such that both motions shall be DENIED.

**BACKGROUND**

The following facts are not in dispute. On May 16, 2005, Officer Gross, a defendant in this action, stopped a Honda Civic driven by Thomas Brooks, who is not a party to this action. The car belongs to plaintiffs, but Mr. Brooks was driving it with their permission. Mr. Brooks showed a Nevada driver's license but admitted that it had been revoked. Officer Gross performed a field sobriety test and an Alcosensor test, which indicated that Mr. Brooks was driving under the influence of alcohol. Officer

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

Gross placed a hand on Mr. Brooks and told him he was under arrest, at which point Mr. Brooks fled on foot. He was quickly apprehended, restrained, and placed in Officer Gross' patrol car. One of the officers on the scene contacted plaintiff Massey to come and get his car. Mr. Brooks posted bail but failed to appear, and on November 10, 2005, a warrant was issued for his arrest. Officer Gross is the complainant on the warrant. It gives Mr. Brooks' Nevada driver's licence number, the license plate number and model of Mr. Massey's Honda Civic, and plaintiffs' home address as Mr. Brooks' address. Declaration of Richard Jolley, Exhibit C.

On November 14, 2005, Officers Parrish and Harkness of the Lake Forest Police Department picked up the warrant when they began their evening shift, and went to the address listed on the warrant in an attempt to find and arrest Mr. Brooks. When they arrived at plaintiffs' home, Officer Harkness went to the back of the home, and Officer Parrish went to the front door and knocked. Ms. Wade answered the door, joined by Mr. Massey. When she was informed of the warrant, Ms. Wade told Officer Parrish that Mr. Brooks had departed that morning for Las Vegas. Officer Parrish suggested that plaintiffs advise Mr. Brooks about the warrant so that he could "take care of it." Officer Parrish also warned plaintiffs that because their car was listed on the warrant, they could be stopped by police at any time. After leaving the residence, Officer Parrish entered information regarding Mr. Brooks and the encounter with plaintiffs into the "CAD notes." Deposition of Maurice Parrish, pp. 16-17, 24-27, 31-32, 35.

Two nights later, on November 16, 2005, Officer Gross and several other officers returned to plaintiffs' residence in an attempt to find and arrest Mr. Brooks. It was after 11:00 p.m. when they arrived and knocked on the door. Mr. Massey looked out the window, saw that it was the police, and asked Ms. Wade to answer the door while he got dressed. Deposition of Miciah Massey, p. 26-27. Ms. Wade pulled on a robe and answered the door. As she cracked it open, Officer Gross pushed his way into the house and pushed Ms. Wade out of the way. Officer Harden followed, and went to the kitchen while Officer Gross searched in the bedrooms, including the children's bedroom, for Mr. Brooks. Deposition of Tashawntay Wade, pp. 62-63, 68-70. Mr. Massey followed Officer Brooks, objecting to the search and stating that Mr. Brooks was not there. Deposition of Miciah Massey, p. 27-28. In the

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 2

meantime, Ms. Wade was in the kitchen, "freaking out" and cursing. Deposition of Tashawntay Wade, p. 71. Following this incident, Ms. Wade asserts that she was stopped on three separate occasions while driving the Honda Civic that was listed on the warrant. *Id*. at 78.

On these facts, plaintiff filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of their Fourth Amendment rights, as well as state law claims of invasion of privacy and violation of RCW 10.79.040. Defendants Michael Harden and Greg Ward have been dismissed by stipulation of the parties. The remaining individual defendants, Robert Gross and David Claeys, have moved for summary judgment on the claims against them. Plaintiffs have cross-moved for summary judgment as to their claims against the individual officers. Both motions present the same issues: whether plaintiffs' Fourth Amendment claims should be dismissed because of the arrest warrant, and whether Officer Gross is entitled to qualified immunity.

**DISCUSSION**

Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad*, 58 F. 3d 439, 441 (9th Cir. 1995); *cert. denied*, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id*. at 324.

**A. Fourth Amendment Claim**

The Supreme Court in *Payton v. New York*, 445 U.S. 573 (1980) held that for Fourth Amendment purposes, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 3

enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603.  Under *Payton*, "an officer must have a reasonable belief that the suspect named in the warrant resides in the third party's home and that he is actually present at the time of the entry into the home." *Watts v. County of Sacramento*, 256 F. 3d 886, 889-90 (9th Cir. 2001).   If the suspect named in the arrest warrant is a guest of the homeowner, then in the absence of exigent circumstances, the police must obtain a search warrant for the home itself to avoid violating the homeowner's Fourth Amendment rights.  *Id*., *citing United States v. Litteral*, 910 F. 2d 547, 553 (9th Cir. 1990).

   Defendants assert that the officers had a legal basis to enter the plaintiffs' home because that address was given on the warrant, and because the car which Mr. Brooks was driving at the time of his arrest was parked in the driveway.  Under *Payton* and *Watts*, however, neither of these bases is sufficient unless the officers had  a reasonable belief that Mr. Brooks **resided** in the home, and that he was **actually present** at the time of the entry into the home.   Otherwise, Mr. Brooks was a mere guest, and the officers needed either exigent circumstances, or a search warrant for the home.  *Watts*, 256 F. 3d at 890.

   Defendants contend that Mr. Brooks gave the plaintiffs' home address as his own at the time that he was arrested, so they had a reasonable belief that he did reside there.  However, Mr. Brooks has submitted a declaration, under penalty of perjury, stating that he told Officer Gross that he was from Las Vegas, Nevada, that he stayed locally with various friends, and that he had only spent the few nights previous to his May 16 arrest at Miciah Massey's house.   Declaration of Thomas Brooks, ¶¶ 11, 12. When asked to provide a mailing address, Mr. Brooks "told [Officer Gross] he could use Miciah Massey's address."  *Id*.  He concludes his declaration by stating that he never told any police officer that he resided at Mr. Massey's house, and that he did not ever keep any clothes or possessions there.  *Id*., ¶ 19.  He only stated that if mail were sent to him at that address, Mr. Massey would let him know so he could pick it up.  *Id*.

   Defendants ask the Court to disregard Mr. Brooks' statement because he is a convicted felon. Defendants' Response, Dkt. # 30, p. 2.  The Court may not make credibility determinations on summary judgment, and thus finds no basis for disregarding Mr. Brooks' testimony.   Defendants also contend that

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 4

Mr. Brooks may not testify to his own out-of-court statement because it is hearsay. However, Mr. Brooks may testify to what he said to officer Brooks without violating the hearsay prohibition. He may not, however, testify to what Officer Gross knew or believed from his statement, and the Court shall disregard that portion of his declaration.

Plaintiffs, for their part, point to the police reports filed by defendants as support for the contention that Mr. Brooks did state that he resided at Mr. Massey's home, and they ask that these hearsay statements be stricken. Defendants did not file a surreply to oppose the motion to strike. The Court finds, in the absence of any declarations or documentation that would establish an exception to the hearsay rule under Federal Rule of Evidence 803, that the statements in the police reports are hearsay and accordingly GRANTS plaintiffs' motion to strike.

In addition to offering the Brooks arrest warrant as a basis for the entry into plaintiffs' home, defendants contend that an outstanding warrant for the arrest of Mr. Massey justified the entry. The warrant was for failure to comply with certain court conditions following a previous domestic violence conviction. Defendants admit that neither Officer Gross nor any of the other officers involved in the entry and search was aware of the warrant, but contend that their "subjective knowledge is irrelevant." Defendants' Motion, p. 13. Defendants have cited to no authority for this proposition. In the absence of such authority, the Court declines to find that a warrant of which the officer is completely unaware can justify entry into the Massey home.

Plaintiffs contend that in the absence of any controverting evidence from defendants, the declaration of Thomas Brooks, together with certain deposition testimony by plaintiff Massey, conclusively establishes that the police could not have reasonably believed that Mr. Brooks lived at the Massey home, and that he was present on the evening of November 16, 2005. Therefore, according to plaintiffs, they are entitled to judgment as a matter of law on the Fourth Amendment claim. However, plaintiffs have quoted selective portions of Mr. Massey's deposition testimony, leaving out the parts where he stated he did not "recall" telling any police officer that Mr. Brooks was his roommate. Deposition of Miciah Massey, p. 16. He also did not recall to whom he spoke, whether it was "the sergeant" or Officer Harden. *Id*. However, he agreed that "at some point that night [he] indicated to a

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 5

Lake Forest police officer that Mr. Brooks has permission to use [his] address." *Id.*

The evidence before the Court in this motion does not allow granting summary judgment to either party on the Fourth Amendment claim. There are material issues of fact to be determined by a jury as to whether the officers had a reasonable belief that Mr. Brooks resided in the Massey home, and that he was present at the time of the officers' entry into the home. *Watts v. County of Sacramento*, 256 F. 3d at 889-90. Accordingly, both parties' motions for summary judgment on the Fourth Amendment claim shall be DENIED.

**B. Qualified Immunity**

Defendants contend that even if there was a Fourth Amendment violation, the individual officers are entitled to qualified immunity. The defense of qualified immunity protects law enforcement officers who reasonably believe they are acting lawfully in carrying out their duties. *Act Up! Portland v. Bagley*, 988 F. 2d 868, 871 (9th Cir. 1993). The purpose of qualified immunity is to avoid "excessive disruption of government" by allowing the resolution of insubstantial claims on summary judgment. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

An official is entitled to qualified immunity when his conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. "The relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Thorsted v. Kelley*, 858 F.2d 571, 573 (9th Cir. 1988). In considering qualified immunity in a motion for summary judgment, three inquiries are necessary: (1) identification of the specific right allegedly violated; (2) determination of whether that right is so "clearly established" that a reasonable officer would be aware of it; and (3) the ultimate determination of whether a reasonable officer could have believed his conduct was lawful. *Romero v. Kitsap County*, 931 F. 2d 624, 627 (9th Cir. 1991); citing *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir. 1988). The test is an objective one; the Court does not inquire into the actual subjective intent of the officer. *Walnut Properties, Inc., v. City of Whittier,* 861 F. 2d 1102, 1111 (9th Cir. 1988).

In order to decide whether a defendant is entitled to qualified immunity, the Court must first

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 6

determine whether, "taken in the light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct violated a constitutional right."  *Devereaux v. Abbey*, 263 F. 3d 1070, 1074 (9th Cir. 2001) (en banc); *quoting Saucier*, 533 U.S. 201.  If no constitutional right would be violated even if the allegations were to be established, that is the end of the inquiry.  However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Saucier,* 533 U.S. at 201.  This inquiry is to be made in light of the specific context of the case, not as a broad general proposition.  *Id*.

Viewing the facts here in the light most favorable to plaintiff, the Court finds that the individual officers' conduct,  in entering and searching plaintiffs' home to search for Mr. Brooks, would, in the absence of a reasonable belief that Mr. Brooks resided in the Massey home and that he was actually present at the time of the entry into the home, constitute a violation of plaintiffs' Fourth Amendment rights.  *Watts v. County of Sacramento*, 256 F. 3d at 889-90.  This right to be free from police entry into one's home for the purpose of searching for a non-resident was clearly established at the time.  *Id*.

The third step in the qualified immunity analysis the ultimate determination of whether a reasonable officer in this situation could have believed his conduct was lawful.  *Romero v. Kitsap County*,  931 F. 2d at  627.  Because there are unresolved factual issues surrounding the question as to Mr. Brooks' living arrangements, and the purpose for which he gave plaintiffs' address as one to be used for contacting him, this context-specific reasonableness becomes a question for the jury.   The courts have struggled with the qualified immunity analysis on the summary judgment,  when there are issues of fact relevant to the analysis.  *See*, *Sloman v. Tadlock*, 21 F. 3d 1462, 1467-69 (9th Cir. 1994).   While the question of clearly established law is for the Court, it is the jury that is "best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place." *Id*.  at 1468.  The existence of a factual dispute is, of itself, not a sufficient basis to deny summary judgment on a qualified immunity claim.  *Saucier*, 533 U.S. at 200.  However, once the Court has concluded that plaintiff's facts would establish a constitutional violation if proven true, and that the right violated is clearly established, the objective reasonableness of the officer's conduct must be determined in light of the facts of the case.  Here, the facts regarding Officer Gross' knowledge of Mr. Brooks' residence

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 7

situation are yet to be determined by the jury, and the final step of the qualified immunity analysis must await that determination. Accordingly, the motion for summary judgment on qualified immunity must be DENIED.

### C. Excessive Force Claim

Plaintiff Tashawntay Wade asserts a claim of excessive force, in violation of the Fourth Amendment, against Officer Gross because he forcibly pushed her aside when he entered the home. Both parties have moved for summary judgment on this claim. Defendants assert that plaintiff Wade cannot assert a Fourth Amendment claim of unreasonable force because she was never "seized" within the meaning of the Fourth Amendment. Defendants also contend that the force used was *de minimus* and did not cause any injury to plaintiff Wade. However, defendants' arguments proceed from the assumption that the police entry into the plaintiffs' home was lawful. As there are issues of fact surrounding the lawfulness of that entry, the reasonableness of the force used against Ms. Wade, and the degree of that force, summary judgment must be denied to both parties on this claim.

### D. Dismissal of Sergeant Claeys

Defendants have moved for dismissal of Sergeant Claeys, contending that he played no role in the alleged violation of plaintiffs' constitutional rights. Plaintiffs argue in response that Sergeant Claeys was present on the scene, and participated in the decision-making regarding use of the arrest warrant to enter plaintiffs' home. Plaintiffs allege that Sergeant Claeys is liable for failure to exercise control over his subordinates in the unconstitutional execution of the warrant. Plaintiffs also assert that it was Sergeant Claeys' responsibility to investigate and determine that Officer Parrish had made an unsuccessful attempt to arrest Mr. Brooks at the Massey home two nights earlier, and had noted the information that Mr. Brooks had departed for Las Vegas. These allegations by plaintiffs, in the absence of any facts by defendants to prove them wrong, create an issue of fact, such that defendant Claeys' motion for summary judgment must be denied.

### E. Injunctive Relief

Plaintiffs have asked that defendants be enjoined from stopping their car to search for Mr.

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 8

Brooks. Specifically, they ask that this Court "enter a permanent injunction prohibiting Lake Forest Park law enforcement officers from stopping the Massey car when they see it being driven on the road, unless they see a [sic] African American male inside the car who matches the description of Thomas Brooks. . . ." Plaintiffs' Cross-Motion, p. 24.   Plaintiffs' request for injunctive relief is based on their assertion that defendants have "promised that [they] will continue to violate plaintiffs' rights by continuing to stop their car even when they have no factual basis for believing that Thomas Brooks is in it. . . ." *Id*. at 24.   Plaintiffs assert that Ms. Wade has "already been stopped twice while driving, by police officers looking for Brooks, even though she was the only person in the car." *Id*. at 22.

A review of the deposition testimony upon which plaintiffs rely shows that plaintiffs are overstating their case for an injunction.   Officer Krzyminski testified the Honda Civic license number on the warrant for Mr. Brooks gave the police probable cause to stop that car at any time.   Deposition of Casimir Krzyminski, p. 55-56.   However, he testified that he would "probably not" stop the car if a woman were driving it. *Id*., p. 56.   Officer Parrish testified that the warrant gave him the right to stop the car even if a woman driver was the only person visible, because someone could be hiding in the back seat.   Deposition of Maurice Parrish, p. 29.   However, he stated that he would **not** stop the Honda Civic when Ms. Wade was driving, because he did not want to be sued. *Id*.   Thus, nothing in either officers' testimony constitutes a "promise" or even a threat that he will stop the Honda Civic in the future.

Nor is there any evidence to support plaintiffs' assertion that the police have repeatedly stopped the car in the past.   Ms. Wade's deposition testimony is that on two occasions, she was questioned briefly about Mr. Brooks' whereabouts in the Northgate Mall parking lot **after** she parked the car and got out.   Deposition of Tashawntay Wade, p. 78.   Thus, she was not "stopped" in the car within the meaning of the Fourth Amendment.   The interactions lasted "less than a minute" and Ms. Wade was not asked to provide identification. *Id*.   On one occasion, Ms. Wade was followed by police for eight blocks to her driveway.   After she turned in and parked, the officer activated his lights. *Id*., p. 79.   This single encounter is the only one that could be considered a "stop" in the constitutional sense.   As such, it cannot serve as the basis for the issuance of a permanent injunction.

An injunction such as that requested here  may only issue when there is a "real and immediate"

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 9

1  threat of future constitutional injury.   *City of Los Angeles v. Lyon*, 461 U.S. 95, 102 (1983).  Plaintiffs
2  have failed to demonstrate this.  Accordingly, plaintiffs' motion for summary judgment on the request for
3  a permanent injunction is DENIED.

## CONCLUSION

5  As there are material issues of fact to be determined by a jury, the parties' cross-motions for
6  summary judgment on the Fourth Amendment claim are both DENIED.  Defendants' motion for
7  summary judgment on qualified immunity grounds is also DENIED.  Defendant Claeys' motion for
8  summary judgment dismissing him from the action is DENIED.  Finally, plaintiffs' motion for summary
9  judgment on the excessive force claim, and the claim for injunctive relief, are both DENIED.

10  DATED this 23rd day of May 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 10